870 So.2d 1137 (2004)
Robert D. RYAN and Patricia Ann Adams Ryan, Plaintiffs-Appellants,
v.
Robert Glen LEE and Mary Alice Williams Lee, Defendants-Appellees.
No. 38,352-CA.
Court of Appeal of Louisiana, Second Circuit.
April 14, 2004.
Rehearing Denied May 6, 2004.
*1138 Gaharan & Wilson by Donald R. Wilson, Jena, for Appellants.
Brown, Erskine, Burkett & Breithaupt by Donald R. Brown, Monroe, for Appellees.
Before BROWN, MOORE, and LOLLEY, JJ.
LOLLEY, J.
In this possessory/boundary action, Robert and Patricia Ryan appeal a judgment by the Thirty-Seventh Judicial District Court for the Parish of Caldwell, State of Louisiana, partially in favor of Glenn and Mary Alice Lee. In response, the Lees answer the Ryans' appeal as to that portion of the judgment in favor of the Ryans. For the following reasons, we reverse in part and affirm in part.

FACTS

Substantive facts
The Ryans and Lees are adjacent land owners. Robert Ryan ("Bobby") purchased property in June 1970 from his father, Aaron "Bubba" Ryan. That property is described as: "the West thirty (30) acres of the Northwest Quarter of the Southwest Quarter of Section 16, Township 12 North, Range 5 East, Caldwell Parish, Louisiana" (emphasis added)(the "Ryan property"). Glenn acquired his property through a donation inter vivos from his parents, H.L. Lee and Georgia Lee, in 1993. That property is described as: "the Northwest Quarter of the Southeast Quarter of Section 17, Township 12 North, Range 5 East, Caldwell Parish, Louisiana," less and except 2.08 acres described in the act (emphasis added)(the "Lee property").
The Ryans have asserted that the common boundary between the Ryan and Lee properties is marked, in whole or in part, by an existing fence which was originally erected by Bubba Ryan and H.L. Lee, the parties' respective ancestors-in-title. Said fence was erected in approximately 1969 or 1970 on a line then identified by a surveyor as the section line between the Ryan property and the Lee property (the "old fence").[1]
Between 1993 and 1995, Bobby removed portions of the old fence, leaving 210 feet at the north end and 12 feet on the south end. Around 1995, Glenn extended the fence line on the north end by 120 feet (still along the old fence line) in order to make an enclosed area for horses on his side of the old fence, making the fenced portion at the north end approximately 330 feet. However, after a survey in the summer *1139 of 2001 by Charles David Parker ("Parker"), the Lees began building a fence on what the Parker survey showed the ideal boundary line to be between the two tracts of land, thus creating a strip of property which is now in dispute between the parties (the "disputed strip").

Procedural facts
In September 2001, the Ryans filed a request for injunction and possessory action against the Lees, claiming they had possessed this disputed strip within visible bounds and adversely for over one year. The Lees answered and reconvened for an action in boundary, which the trial court dismissed upon the Ryan's exception. Thus, the matter proceeded to hearing solely on the Ryans' request for injunctive relief and the right to possession of the disputed tract. After that hearing, a judgment was issued by the trial court in favor of the Ryans, recognizing their right of possession and enjoining the Lees from interfering with their possession. The ruling further ordered the Lees to remove the fence erected by them and to replace the old fence.
However, during these proceedings at the trial court, the Lees proceeded to file a writ application regarding the dismissal of their boundary action, which writ this court granted, ordering the reinstatement of the Lees' boundary action. That matter then proceeded to trial, with the Ryans' claiming in defense that they had possessed the disputed strip within visible bounds.[2]
After a trial of the Lees' boundary action, the trial court fixed the boundary line as indicated on Parker's survey, except for 330 feet on the north end and 12 feet on the south end, which portion of the property was awarded to the Ryans on their plea of thirty years' acquisitive prescription. The Ryans have appealed, urging that the trial court erred in not finding them in possession of the disputed strip and not upholding their plea of acquisitive prescription as to the disputed strip. The Lees have answered the appeal, arguing that the judgment was erroneous as to the award of 12 feet on the southern end of the boundary line and any more than 210 feet on the northern end of the boundary line.

DISCUSSION
On appeal, the Ryans raise several assignments of error in connection with the issue of the disputed strip and its possession and alleged ownership by acquisitive prescription.

Ten Years' Acquisitive Prescription
First, the Ryans argue that the trial court erred in not finding them the owners of the disputed strip by virtue of ten years' acquisitive prescription. Ownership and other real rights in immovables may be acquired by the prescription of ten years. La. C.C. art. 3473. By pleading prescription, the Ryans had the burden of proving the four requisites for ten years' acquisitive prescription: (1) possession for ten years; (2) good faith; (3) just title; and (4) a thing susceptible of acquisition by prescription. La. C.C. art. 3475; see also, Harry Bourg Corp. v. Punch, 94-1557 (La.App. 1st Cir.04/07/95), 653 So.2d 1322, 1324. In this instance, their claim fails under the element of "just title."
A title is just for purposes of acquisitive prescription when the deed is regular in form, is valid on its face, and would convey the property if executed by the owner. See La. C.C. art. 3483; see also, O'Brien v. Alcus Lands Partnership *1140 Trust, 577 So.2d 1094, 1097 (La.App. 1st Cir.1991). The paper title relied upon by one seeking to establish ten years' acquisitive prescription must sufficiently describe the property so as to transfer its ownership. One must be able to identify and locate the property from the description in the deed itself or from other evidence which appears in the public records. O'Brien, supra, citing, Pure Oil Co. v. Skinner, 284 So.2d 608, 611 (La.App. 2d Cir.1973), rev'd on other grounds, 294 So.2d 797 (La.1974). A deed describing a different tract of land from the one in controversy is not translative of the land in controversy, and therefore cannot serve as a basis for prescription. Albert Hanson Lumber Co. v. Angelloz, 118 La. 861, 43 So. 529 (La.1907). Here, it is evident that the deed transferring ownership to Ryan did not include the disputed strip, i.e., the property description contained therein clearly described property contained only in section 16, whereas the disputed strip lies entirely and actually in section 17. Because the disputed strip was not described in the deed transferring ownership to Bobby, he did not acquire just title to the disputed strip. Without the requisite element of "just title," the Ryans cannot show they acquired ownership of the disputed strip by ten years acquisitive prescription, making this assignment of error without merit.

Possession and Thirty Years' Acquisitive Prescription
The additional issues raised by the Ryans on appeal, as well as those raised by the Lees in their answer, all relate generally to the subjects of possession and thirty years' acquisitive prescription; therefore, the various assignments of error raised by the parties can be addressed and determined in a comprehensive discussion of the subject.
This litigation has been centered around Bobby's removal of a large portion of the old fence in 1995 and the effect of that removal. In fact, the trial court's final conclusion was based solely on where fencing existed and where it did not. The trial court determined as to a large length of the disputed strip where the old fence had been completely removed that the Ryans had not possessed within visible bounds for the requisite length of time to acquire ownership by thirty years' acquisitive prescription. For the northern and southern ends of the disputed strip, the trial court noted that visible bounds or vestiges of the old fence remained, and so awarded those portions of the disputed strip to the Ryans.
Although the removal of a large portion of the old fence as a visible boundary between the properties is crucial in some respects, it is of little significance on its own to answer whether the Ryans' continued to exercise adverse possession of the disputed strip. Thus, it is critical to distinguish and discuss two distinct means by which a party can show their ownership by thirty years' acquisitive prescription in Louisiana, those being by (1) possessing within visible bounds, and (2) adverse possession. See, Sattler v. Pellichino, 71 So.2d 689 (La.App. 1st Cir.1954).
The notion of possession within "visible bounds" derives from La. C.C. art. 794 (former article 852 of the Louisiana Civil Code of 1870), which article is contained in Title VI of the current Louisiana Civil Code addressing "Boundaries." Article 794 provides, in pertinent part, "[i]f a party and his ancestors in title possessed for thirty years without interruptions, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds." (Emphasis added). Thus, art. 794 envisions an uninterrupted, thirty-year possession within a visible *1141 boundary and provides the means for determining the boundary in accordance with that possession.[3]
Regarding adverse possession and thirty years' acquisitive prescription, La. C.C. art. 3486 provides that, "[o]wnership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith." As provided in the comments to art. 3486, the attributes or requirements of this prescription are as set forth in La. C.C. art. 3476, which states that:
The possessor must have corporeal possession, or civil possession preceded by corporeal possession, to acquire a thing by prescription.
The possession must be continuous, uninterrupted, peaceable, public and unequivocal. (Emphasis added).
Notably, there is no requirement therein that the possession be marked by visible bounds. Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. La. C.C. art. 3425. The revision comments to art. 3425 further explain that "[c]orporeal possession is that by which one possesses a thing corporeally, for example, by residing in a house, cultivating land, or using a movable." Furthermore, "[i]n the absence of title, one has possession only of the area he actually possesses." La. C.C. art. 3426 (emphasis added). The revision comments to that article explain that "[a]ctual possession must be either inch by inch possession... or possession within enclosures." (Emphasis added).
Had the entirety of the old fence remained in place for thirty years, the Ryans obviously would have established a visible boundary for the requisite period of time pursuant to La. C.C. art. 794. Although this did not occur, the inquiry does not stop there (as the trial court did), but then becomes whether the Ryans exercised such other acts of possession over the disputed strip to show their adverse possession for the requisite period of time.[4] We conclude that they did, because, clearly, as required by La. C.C. art. 3424, the Ryans established corporeal possession of the disputed strip by their acts of use, detention, and enjoyment of the thing.
As stated by the Louisiana Supreme Court, "the nature of possession is neither simple nor precise." Liner v. Louisiana Land & Exploration Co., 319 So.2d 766, 772 (La.1975), citing, Melvin H. Riseman, Elementary Considerations in the Commencement of Prescription on Immovable Property, 12 Tul. L.Rev. 608 (1938); see also Ferguson v. Gunther, 385 So.2d 876 (La.App. 2d Cir.1980) ("The quality of corporeal possession required to defeat an owner in constructive possession and establish title by acquisitive prescription is neither simple nor precise"). For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed, which "actual possession is determined according to the nature of the property." La. C.C. art. 3487 (former art. 3503 of the La. C.C. of 1870) and revision comments; see also *1142 Liner, supra; Hill v. Richey, 221 La. 402, 59 So. 434 (1952); Ferguson, supra.
For instance, and specifically applicable to the facts at hand, "the corporeal possession requisite in the case of agricultural land should not be the same as that in the case of wood land or swamp land...." Liner, supra, at 772. Therein the court noted that in the case of wood land or swamp land, very little could be done to indicate possession. Id. at 772, n. 12. By implication, adverse possession of agricultural lands would be more obvious, i.e. by cultivating same. In fact, in Hill, 59 So.2d at 439, the court noted that:
In the thirty years' prescription which is not based on title, the possession is called pedis possessio, foot possession; as there is no title to indicate the limits in which the possessor considers his rights as owner to extend, his position is limited by the area over which he exercises actual possession. The cultivated fields would be the most obvious limits of possession.... (Emphasis added).
The Hill court further stated that "there is nothing which limits [thirty years' acquisitive prescription] to land possessed by enclosures for a period of 30 years. The only restriction is that announced in [art. 3487]" regarding "actual possession." Hill, 59 So.2d at 439-40 (emphasis original). The court further stated:
There is nothing said or implied in these articles that in order to possess, the land must be enclosed for the entire time, or for that matter, that it must be enclosed at all. It is well recognized, of course, that for the prescription of 30 years to be successfully pleaded the person pleading it must have the actual, physical, and corporeal possession of the property which he seeks to acquire by this period of prescription; that, when once this prescription has been commenced and establish [sic] and has not been interrupted, it may be preserved by external and public signs announcing the possessor's intention to preserve the possession of the thing,.... (Emphasis added).
Id. at 440.
In Ferguson, supra, this court considered unimproved residential property and determined that "... periodic mowing of unimproved residential property up to the line where an old fence once stood years before, is sufficient corporeal possession to support acquisitive prescription." Id. at 877, citations omitted. The Ferguson court placed emphasis on the nature of the land (in that case residential) and the continuous, periodic use of that land.
Here, the evidence indicates that Ryan actually and corporeally possessed the disputed strip, which was agricultural in nature. In this case, it was not controverted that Bobby continuously and periodically during the thirty years exercised "physical acts of use, detention, or enjoyment" over the disputed strip, evidenced by such continuous acts as its cultivation, a "junk pile," and a small building characterized as Ryan's "shop." This is the type of possession described in art. 3425, i.e. corporeal possession.[5] Such corporeal possession is *1143 necessary to first establish possession and may also serve to retain that possession. See La. C.C. arts. 3424 and 3431.
That said, it is clear in the case sub judice, that the Ryans failed to show they had possessed the entire disputed strip within a visible boundary for an uninterrupted period of thirty years, because at some point in time a portion of the fence was taken down and, for that portion of the disputed strip, the entire boundary was no longer visible. In that respect the trial court was correct. However, the trial court erred in placing complete emphasis on the existence (or non-existence) of the old fence and in not considering whether the Ryans had exercised acts of adverse possession over the disputed strip for thirty years, as they claimed to have done, and, therefore, whether they acquired ownership of the disputed strip by virtue of thirty years' acquisitive prescription in accordance with La. C.C. art. 3486 and arts. 3424, et seq.[6] Clearly, we conclude that by the continuous and periodic use, detention, and enjoyment of the disputed strip, the Ryans showed their adverse possession of the entire disputed strip for at least thirty years, from which follows their establishment of thirty years' acquisitive prescription under La. C.C. art. 3486, et seq., despite the loss of a visible boundary over a portion of the disputed strip for a short period of time. Moreover, the assignment of error raised by the Lees in their answer is consequently deemed to be without merit.

CONCLUSION
For the foregoing reasons, that portion of the trial court's final judgment against the Ryans is reversed and that portion in their favor is affirmed; thus, by virtue of the Ryans' adverse possession of the disputed strip for at least thirty years, they are deemed to be owners of same in accordance with La. C.C. art. 3486. Moreover, we adopt the legal property description set out in the trial court's judgment of March 8, 2002 to describe now the Ryan property in accordance with this opinion. The costs of these proceedings are assessed to the Lees.
REVERSED IN PART, AFFIRMED IN PART.
MOORE, J., would grant rehearing.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, MOORE, and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] The old fence, in fact, is shown on a survey by S.B. Easterly dated February 1978.
[2] The parties stipulated that the testimony taken at the first hearing would be allowed to be considered by the trial court in making an ultimate determination of the merits of both the principal demand and the reconventional demand.
[3] In fact, the thirty years' acquisitive prescriptive noted in art. 794 has been referred to as "thirty year boundary prescription," and a distinction was noted between "thirty year boundary prescription" and the "adverse possession necessary for thirty-year prescription." See, John F. Simon, Note on Real Property, Boundaries, Article 852, Louisiana Civil Code of 1870, 32 Tul. L.Rev. 324, 327 (1958).
[4] In failing to make such an analysis, the trial court made an error of law, which is subject to de novo review by this court. Kevin Associates, L.L.C. v. Crawford, XXXX-XXXX (La.01/30/2004), 865 So.2d 34.
[5] Although there was differing testimony regarding whether a turn row existed at the old fence line, such is only pertinent in order to determine whether a visible boundary existed under La. C.C. art. 794 thirty years' acquisitive prescription. Moreover, whether vestiges of the old fence remained in some places is of no moment for corporeal possession as exercised by the Ryans. Such a consideration would be applicable if the Ryans had exercised only civil possession of the disputed strip, i.e., if they had ceased to possess corporeally and had retained possession by the mere intent to possess as owners. See La. C.C. art. 3431, revision comment (d), which states that "... vestiges of works, ..., may signify civil possession."
[6] Additionally, consideration of ownership and possession are relevant, proper, and necessary inquiries in a boundary action. See La. C.C. art. 792 and La. C.C.P. art. 3693.